WILLIAM McGOVERN *vs.* CARL TINGLOF, JUNIOR, administrator.

Norfolk.    February 7, 1962. — April 6, 1962.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, CUTTER, & KIRK, JJ.

*Negligence,* Motor vehicle.    *Practice, Civil,* Auditor: findings.

At the trial of an action against an administrator for injuries sustained by the plaintiff when, while standing near gasoline pumps at a filling station situated at the intersection of a street and a highway, he was struck by an automobile which ran off the highway into the yard of the filling station and in the driver's seat of which lay the defendant's intestate, a conclusion that the intestate was exonerated from responsibility for the operation of the automobile at the time it struck the plaintiff was required by findings of an auditor, not contradicted by other evidence, that the intestate, while operating his automobile properly as it approached the intersection, suddenly and without warning suffered a fatal

McGovern v. Tinglof.

coronary attack, that from the moment of the attack he was either dead or completely incapacitated thereby, and that the accident "was caused in its entirety" by the attack.

TORT. Writ in the Municipal Court of Brookline dated August 12, 1957.

Upon removal to the Superior Court the action was tried before *Cahill*, J., who, after a verdict for the plaintiff, reported the case.

*Walter F. Henneberry*, for the defendant.

*Lewis G. Pollock*, for the plaintiff.

SPALDING, J. The auditor, to whom this case was referred under the usual rule, found as follows: On the day of the accident (October 25, 1956) the plaintiff was manager of the U. T. C. filling station at the corner of Riverway and Huntington Avenue in Boston.[1] The station "is situated on the right hand side as one travels from Brookline on Washington Street toward Boston on Huntington Avenue which is a continuation of Washington Street at the Brookline-Boston line." The two streets are part of Route 9, known as the Worcester Turnpike. "As one approaches the Boston line from Brookline the highway is divided into easterly and westerly lanes by an iron picket fence. There is room for four lanes of traffic on either side of the dividing fence. At the end of this . . . fence at the time of this accident, traffic was allowed to make a U turn from the easterly bound lane to the westerly bound lane. Beyond this Huntington Avenue goes under the overpass of the Jamaicaway. On the other side of this overpass on the right as one goes under . . . [it] heading toward Boston, is a street known as the Riverway. At the junction of the Riverway and Huntington Avenue is situated the filling station which was the scene of this accident. On the curving corner of the intersection of the Riverway and Huntington Avenue is a wide entrance to the station, sufficient in

---

[1] At the arguments we were informed that the plaintiff had died, and that Irving Brown and Ralph Davis, who had been appointed special administrators of his estate, had entered an appearance on behalf of the estate. The original plaintiff will be referred to in the opinion as the plaintiff.

width for three cars to enter abreast. There are two islands of gasoline pumps, one situated alongside the . . . office . . ., the other island of pumps is situated nearer Huntington Avenue." At the time of the accident the plaintiff was standing near the Huntington Avenue pumps at the rear of a customer's car, which he was "servicing."

On the day of the accident, just before noon, Carl Tinglof (Tinglof) left his place of business on Floral Street, Brookline, in his automobile. He was accompanied by a business associate whom he was driving to Kent Street, Brookline. Tinglof, aged sixty-four, was a "strong, healthy, active man with no history of any physical diseases . . . [or] fits, spells or seizures." He "turned his car into Pond Street and from Pond Street into Washington Street and proceeded along Washington Street at a speed of approximately 35 miles per hour. At a point at the end of the iron fence and just before going under the overpass . . . [Tinglof's] head fell back against the cushion of the front seat, [he] dropped his hands from the wheel, gasped two or three times and lay still." This happened about 300 feet from the point of the accident. Tinglof's passenger "had never operated a car and was unable to do anything to stop it or alter its course." The car continued on and came into the yard of the filling station, striking and injuring the plaintiff. Between the time when Tinglof's head fell back and the accident, there was "no further evidence of movement or change of position" by him; nor, after the two or three gasps, were there any sounds. Upon arrival at a hospital, to which Tinglof was taken after the accident, he was pronounced dead. After the accident "there was no evidence of movement or sound" on the part of Tinglof. The cause of death was "coronary occlusion."

After finding the foregoing facts, the auditor concluded: "I find that . . . [Tinglof] was operating his motor vehicle in a prudent manner . . . when he was suddenly seized with a coronary attack which rendered him helpless and unable to exercise any ability to operate his motor vehicle. From the moment of that seizure I find that he was either

dead from the effects of the coronary occlusion or so close to death as to have been rendered completely incapable of operating his vehicle through no fault of his own. . . . I find that the accident, serious as it was, was caused in its entirety by a sudden coronary occlusion of which . . . [Tinglof] had no warning and that no conduct of . . . [his] prior to his seizure contributed in any way to the accident . . . . Therefore, I find for the defendant.''

The case was heard in the Superior Court on the auditor's report and other evidence. The jury found for the plaintiff, and the verdict was recorded under leave reserved. The defendant excepted to the denial of his motion for a directed verdict, to the denial of his motion for entry of a verdict in his favor under leave reserved, and to certain rulings on evidence during the trial. To determine the correctness of these rulings, the judge reported the case to this court.

There can be no doubt that, if the only evidence was the auditor's report, the defendant's motion for a directed verdict should have been granted. ''By the great weight of authority a sudden and unforeseeable physical seizure rendering an operator unable to control his motor vehicle cannot be termed negligence. . . . Such [a seizure] does not fall within the definition [of negligence] by Chief Justice Rugg in *Altman* v. *Aronson,* 231 Mass. 588, 591.'' *Carroll* v. *Bouley,* 338 Mass. 625, 627. But the case was not tried solely on the auditor's report; there was additional evidence. It is the plaintiff's contention that this evidence was sufficient to deprive the auditor's findings of their compelling effect and thus present a question of fact for the jury on the issue of negligence. See *Cook* v. *Farm Serv. Stores, Inc.* 301 Mass. 564, 566–568.

The evidence relied on to rebut the artificial effect of the auditor's findings is this: One Barrett, a witness called by the plaintiff, testified that just prior to the accident he was driving a truck on Washington Street, Brookline, ''headed toward Boston.'' As ''he got under the overpass on the Jamaicaway,'' he heard an automobile horn. The sound

came from the rear of his truck.  Looking into the rear view mirror on the right door, he saw "this automobile coming by him on a swing on the right hand side of his truck."  The automobile eventually passed his truck and "went off to the right from him into a gas station driveway" and struck a man standing there.  At the time he observed the automobile it was under the overpass, and he (Barrett) was "two-thirds under the [overpass]."  Barrett observed the automobile after it went by him until it went into the gas station — a distance of about 100 feet — and estimated that its speed was forty-five miles per hour and that this speed continued to the point of the accident.

The plaintiff contends that this evidence would warrant a finding that Tinglof was negligent.  In support of this contention he argues: Tinglof must have been alive as his car entered the underpass, for he sounded his horn and passed Barrett's truck "in an otherwise apparently normal manner" on the right.  This, it is said, was a violation of G. L. c. 89, § 2, as appearing in St. 1933, c. 301, which provides that the "driver of a vehicle passing another vehicle traveling in the same direction shall drive a safe distance to the left of such other vehicle."  Violation of this statute, it is urged, was evidence of negligence.  The plaintiff also argues that, in approaching the "practically blind" intersection of Riverway and Huntington Avenue, Tinglof violated § 14, as amended through St. 1948, c. 324, and § 17, as amended through St. 1948, c. 564, § 1, of G. L. c. 90,[1] and that these violations were likewise evidence of negligence.

We are of opinion that this evidence did not deprive the auditor's findings of their compelling force.  At the very most it might warrant a finding that Tinglof was at a point

[1] The relevant portions of these sections provide that "The person operating a motor vehicle on any way or a curve or a corner in said way where his view is obstructed shall slow down and keep to the right and upon approaching any junction of said way with an intersecting way shall, before entering the same, slow down and keep to the right of the center line."  § 14.  "[I]t shall be prima facie evidence of a rate of speed greater than is reasonable and proper . . . if a motor vehicle is operated . . . in any place where the operator's view of the road traffic is obstructed either upon approaching an intersecting way or in traversing a crossing or intersection of ways, . . . at a rate of speed exceeding fifteen miles per hour."  § 17.

nearer to the scene of the accident, when the seizure occurred, than the 300 feet found by the auditor.

There was no evidence to contradict the auditor's finding that Tinglof was either completely incapacitated or dead when his car went into the filling station and struck the plaintiff. Whether the seizure occurred 300 feet or 100 feet from the place of the accident is of little or no importance. Nor is it of importance that the statutes mentioned above were violated, if such was the case. The cause of the plaintiff's injury was a car which went out of control through no fault of the driver. The statutory violations, if any, were a condition and not a cause. *Lockling* v. *Wiswell,* 318 Mass. 160, 165. For aught that appears, the accident would have happened had there been no violations. The case at bar is distinguishable from *Carroll* v. *Bouley,* 338 Mass. 625, on which the plaintiff heavily relies. There it was held that a finding was warranted that the car which struck the plaintiff was under the control of a responsible operator at the time of the accident. Here the findings of the auditor establish that Tinglof at all relevant times was not a responsible operator. It follows that the defendant's motion for a directed verdict should have been granted. It is unnecessary to consider the defendant's exception to rulings on evidence.         *Judgment for the defendant.*