MARY ELLINGSGARD & another *vs.* GISELA SILVER.

Berkshire.    December 7, 1966. — February 9, 1967.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & REARDON, JJ.

*Negligence,* Boat, Incapacitating physical seizure, In hiring, Violation of law.    *Practice, Civil,* New trial; Exceptions: whether error harmful; Charge to jury.    *Error,* Whether error harmful.    *Evidence,* Relevancy and materiality, Privileged communication, Judicial discretion.    *Proximate Cause.*

In an action for injuries resulting when a motorboat on a lake struck a dock after the operator had suffered a fatal heart attack and had lost control of the boat, certain evidence as to previous heart trouble on his part over a period of years did not warrant a finding that such incapacitating heart attack was foreseeable or findings, based on foreseeability thereof, that the operator was incompetent to operate the boat and that his operation was negligent.    [36–37, 39]

Denial of a motion by the plaintiffs in an action for a new trial on the ground that verdicts for the defendant were against the weight of the evidence was not an abuse of discretion where, even if the weight of the evidence compelled a finding of one of the facts necessary for the plaintiff to prove, the evidence did not warrant a finding of another such fact.    [39–40]

At the trial of an action in which the declaration contained counts alleging negligent operation of a motorboat by an employee of the defendant and counts alleging negligent hiring and employment of the operator, a question asked by the defendant's counsel of another employee of the defendant who had hired the operator, whether the witness had any knowledge that the operator had operated in an improper manner, was relevant and permissible. [40]

The attorney-client privilege may extend to communications from the client's agent or employee to the attorney. [40]

After a stenographer who had taken the transcript of a hearing had subsequently testified at the trial of an action as to certain portions of the transcript, the parties calling the stenographer as a witness were not harmed by exclusion of such portions of the transcript when offered in evidence by their counsel. [40–41]

In an action for injuries resulting from a collision of a motorboat with a dock on a lake, no error appeared in an instruction by the judge to the jury to disregard the statute governing motorboats where it was not shown that any noncompliance of the operator with the statute had any causal connection with the accident. [41]

In an action based on alleged negligence of the defendant's agent in hiring and employing a motorboat operator whose health rendered him unfit to operate it, no error appeared in a statement made by the judge to the jury in the course of the charge, that even if the agent had inquired as to the prospective operator's health he might not have answered truthfully. [41]

TORT. Writ in the Superior Court dated September 25, 1962.

The action was tried before *Bolster, J.*

*Frederick M. Myers* for the defendant.

*David C. Katz & Carl B. Israel* for the plaintiffs.

SPALDING, J. We summarize the evidence in this action of tort as follows: On August 16, 1961, Mary Ellingsgard was injured when a motorboat struck the dock on which she was standing. The dock, owned by a third person, extended into Pontoosuc Lake near Pittsfield. Shortly before the boat struck the dock, Perley Brace, the owner and operator, suffered a heart attack and lost control of the boat. His death occurred "some time prior to the striking of the dock." The cause of death was "probable coronary thrombosis." Brace was an employee of the defendant and was acting in the course of his employment when the heart attack occurred.

The defendant conducts Pontoosuc Lodge, a summer resort. The defendant's daughter, Mrs. Barbara Kolodkin,

Ellingsgard *v.* Silver.

was authorized to hire employees for the lodge, and employed Brace to "take people out for water skiing or for boat rides." His employment commenced on July 2, 1961, and continued until the time of the accident. Other evidence will be recited later.

The plaintiffs are husband and wife and their declaration is in four counts. The first and third counts are for personal injuries sustained by the plaintiff Mary, and the second and fourth are for consequential damages sustained by the plaintiff Charles. The first and second counts allege negligent operation of the motorboat. The third and fourth counts allege negligence in hiring and employing Brace.

There was a verdict for Mary on count 1 and for Charles on count 2. Verdicts for the defendant were returned on counts 3 and 4. The case comes here on two bills of exceptions brought respectively by the defendant and the plaintiffs. The questions raised by the defendant's exceptions relate to the denial of her motion for a directed verdict on each count, the denial of her motion for a new trial, and several rulings on evidence. The plaintiffs' exceptions relate to the denial of their motion for a new trial on counts 3 and 4, several evidentiary rulings, and certain portions of the charge. The plaintiffs waive their exceptions in the event the defendant's exceptions are overruled.

### THE DEFENDANT'S EXCEPTIONS.

We consider first the defendant's exception to the denial of her motion for directed verdicts on counts 1 and 2. These counts are based upon the negligent operation of the boat. The judge rightly charged the jury that there was no evidence of negligence in the manner in which the boat was operated prior to the heart attack. And it has been held that "a sudden and unforeseeable physical seizure rendering an operator unable to control his motor vehicle cannot be termed negligence." *Carroll* v. *Bouley,* 338 Mass. 625, 627. *McGovern* v. *Tinglof,* 344 Mass. 114, 116. The plaintiffs' theory, however, is that Brace's seizure was

reasonably foreseeable; that Brace was therefore incompetent to operate the boat; and that the operation of the boat in these circumstances was negligent.

We know of no decision of this court, and our attention has been directed to none, which has considered the validity of the plaintiffs' theory. The few jurisdictions which have considered the question, however, have held that the operation of a motor vehicle, without more, may be the basis for negligence when the operator knew or should have known that he was likely to be subject to an incapacitating physical seizure. *Freifield* v. *Hennessy,* 353 F. 2d 97, 98 (3d Cir.). *Malcolm* v. *Patrick,* 147 So. 2d 188 (Fla.). *Goldman* v. *New York Rys.* 185 App. Div. (N. Y.) 739. See Restatement 2d: Torts, § 283C; Annotation, 28 A. L. R. 2d 12, 40–42. But even if we were to adopt that rule, we are of opinion that the evidence was insufficient to warrant a finding that the operation of the boat constituted a failure to exercise reasonable care and foresight.

The evidence relating to Brace's physical condition was: At the time of his death he was forty years old. He was a prisoner of the Japanese for several months during World War II and had a heart attack in 1949. He had other heart attacks in 1957, 1958, and early in 1961. In 1957, the attack (acute myocardial infarction) was characterized by "chest pains of two to three hours while he was walking on a golf course, and accompanied by some radiation of pain to the left arm, dizziness, weakness, and shortness of breath." The symptom of the 1958 attack (ventricular tachycardia) was rapid heart beating. The 1961 attack (also ventricular tachycardia) occurred when he was driving a "snow jeep." He felt "a pain in his chest . . . and . . . left arm, accompanied by a feeling of faintness and perspiration." Brace's wife testified that "when he had pains in his heart or chest he called a doctor." He was admitted to a hospital after each of his three most recent attacks, and since 1957 had been taking anti-coagulent drugs. Brace's physician testified that it was likely that the attacks would continue. "They might not . . . [have been] necessarily worse and

worse each time and come with more frequency, but it . . . [was] highly unlikely they would stop altogether and never reoccur." The physician also testified that he knew Brace had driven motor vehicles and had "never advised him not to drive . . . [them]." In 1959, after examining Brace, the physician reported that he was able to "lead a moderately normal life." Mrs. Kolodkin testified that Brace was a "robust looking man" who "didn't look ill in any way" and "seemed always very jolly." She said that when she interviewed him for the job she knew he had driven a school bus and drove his own car, but did not know he had a "heart condition." She did not inquire about the state of his health.

It could have been inferred from this evidence that it was foreseeable that Brace was likely to continue to suffer heart attacks similar to his previous ones. But there was no evidence that Brace had ever suffered a lapse of consciousness as a result of his heart condition, or that he was physically unable to stop what he was doing without mishap and call a doctor when the symptoms occurred. Nor was there any medical testimony that his next attack was likely to be severe and incapacitating.

In those jurisdictions which have held that negligence may be based upon the operation of a motor vehicle when the operator should foresee a physical seizure, foreseeability has been found in two types of circumstances. One is when the operator suffers from a condition which indicates, from a medical viewpoint, a fairly immediate likelihood that it will result in an attack rendering him unconscious. E.g. *Malcolm* v. *Patrick,* 147 So. 2d 188 (Fla.). The other is when the operator suffers warning symptoms of a physical failure during actual operation, but neglects to heed such warnings and continues to operate the vehicle. E.g. *Goldman* v. *New York Rys.* 185 App. Div. (N. Y.) 739. We know of no case which holds that, absent medical testimony, previous symptoms of the sort suffered by Brace would warrant a finding that an incapacitating seizure was foreseeable. See *Lucas* v. *Juneau,* 168 F. Supp. 195, 200 (D. C.

Alaska); *Porter* v. *Price,* 11 Utah 2d 80. To hold the contrary would impose a severe limitation upon the substantial number of persons who, with medical advice and treatment, attempt to live moderately normal lives despite heart conditions and other infirmities. See *General Elec. Co.* v. *Rees,* 217 F. 2d 595, 598 (9th Cir.).

The evidence would not warrant findings that the incapacitating seizure suffered by Brace was foreseeable and that he was therefore incompetent to operate the boat. We do not reach the question whether, if the evidence had warranted such findings, the defendant would be liable either under respondeat superior or on the ground that the defendant negligently entrusted the operation of the boat to Brace. The defendant's exception to the denial of her motion for directed verdicts must be sustained.

### The Plaintiffs' Exceptions.

1. The plaintiffs contend that the verdicts for the defendant on counts 3 and 4 were against the weight of the evidence and that the denial of their motion for a new trial on those counts constituted reversible error. The granting of a new trial on the ground that the verdict is against the weight of the evidence rests in the discretion of the trial judge, and the instances in which the court has found an abuse of that discretion are rare. *Hartmann* v. *Boston Herald-Traveler Corp.* 323 Mass. 56, 59–61. It is seldom "that it can be ruled as matter of law that the burden of proof has been sustained." *Companion* v. *Colombo,* 338 Mass. 620, 623. Counts 3 and 4 alleged negligent hiring and employment. To succeed, the plaintiffs were required to show not only that the defendant failed to make an adequate investigation before employing Brace, but also that Brace was incompetent to operate the boat; that the use of due care would have disclosed his incompetence; and that the injuries complained of were caused by such incompetence. See Restatement 2d: Agency, § 213b; Restatement 2d: Torts, § 307. Even if the weight of the evidence compelled a finding that the defendant failed to use proper care in investigating Brace's physical condition, still, as we

have indicated in our discussion of the defendant's exceptions, the evidence was insufficient to warrant a finding that Brace was incompetent to operate the boat. We are of opinion that there was no abuse of discretion in the denial of the motion for a new trial.

2. The judge allowed the defendant's counsel to question Mrs. Kolodkin, the defendant's daughter and employee, whether she had any knowledge that Brace had operated the boat in an improper manner. The plaintiffs contend that this question was irrelevant to the issue of proper care in hiring Brace. But the plaintiffs' declaration alleged negligent operation and employment, as well as negligent hiring. The question complained of was relevant to the issues of operation and employment, and there was no error in allowing it.

3. During the testimony of Mrs. Kolodkin, she was asked by the plaintiffs' counsel to produce a written statement she had made relative to the accident. It appeared that the statement was in the possession of the defendant's attorney, who refused to allow inspection of it on the ground that it was within the attorney-client privilege. The judge ruled that the document was privileged and the plaintiffs excepted to the ruling. The attorney-client privilege may extend to communications from the client's agent or employee to the attorney. Wigmore, Evidence (McNaughton rev.) § 2318 (1); McCormick on Evidence, § 100. The record relating to this ruling is meager and we cannot say that the judge erred.

4. The plaintiffs called as a witness Helen Tierney, the stenographer who took the transcript of the District Court hearing of the cases. After the witness had testified concerning certain portions of this transcript, the plaintiffs' counsel offered "the transcript" in evidence, and the judge excluded it. The plaintiffs contend that this exclusion was error. But the admission of a writing upon which past recollection is recorded rests in the discretion of the trial court. *Fisher* v. *Swartz*, 333 Mass. 265, 270. Even if we assume that it was the relevant portion of the "transcript" which was referred to, we find no abuse of discretion in its

Ellingsgard *v.* Silver.

exclusion. But in any event the plaintiffs were not harmed, since the witness had already testified concerning the portions of the transcript sought to be introduced.

5. The plaintiffs' exceptions to the charge relate to the instruction that the statute governing the operation of motorboats[1] was to be disregarded, and to the statement that even if the defendant had inquired as to Brace's health, Brace might not have told the truth. We find no error in either of the portions of the charge to which the plaintiffs except. Even if Brace had not complied with certain sections of the statute governing motorboats, there is no indication that such noncompliance was in any way related to the accident. And, as we indicated above, the plaintiffs were required to show not only that the defendant failed to make a proper investigation into Brace's health, but also that such investigation would have disclosed his unfitness. Even if Brace had been unfit to operate the boat, the defendant might have been unable to discover that fact. The jury were entitled to consider whether Brace would have disclosed his medical history. We are of opinion that the instruction complained of, taken in context with other portions of the charge, did not prejudice the plaintiffs.[2]

> *Plaintiffs' exceptions overruled.*
> *Defendant's exceptions sustained.*
> *Judgments are to be entered for*
> *the defendant on all counts.*

---

[1] G. L. c. 90B, inserted by St. 1960, c. 275, § 2.

[2] The charge on this aspect of the case was as follows: "If Mrs. Kolodkin had asked Mr. Brace what his condition was, we don't know whether he would have lied to her and said, 'I'm a rugged fellow. I played professional football last winter' and all that sort of thing. She would let it go at that. That wouldn't help us much. If she had instigated an independent examination about him — if it was necessary that she should do so and that is up to you to say — if she should have, what would she have found out? . . . If the plaintiff is to recover through this Count 3, she must persuade you by the fair weight of the credible evidence that because of Mr. Brace's appearance and because of the nature of the work he was going to undertake — going out on the lake with guests — Mrs. Kolodkin was under a duty to launch an independent investigation, a reasonable investigation — not a full F. B. I. job, but a reasonable investigation — as to his fitness for the work. And if you find that she should have done that, and if you find that a reasonable investigation would have disclosed — not might, but would have — that Mr. Brace was unfit for that work, she should not have hired him and let him take the boat out. If she did, Mrs. Silver would be liable."