**COMMAND TRANSPORTATION, INC., Plaintiff,**

v.

**Y.S. LINE (USA) CORPORATION, Defendant.**

**Civ. A. No. 86–1501–S.**

United States District Court,
D. Massachusetts.

May 28, 1987.

---

Richard D. Bickelman, Deutsh Williams Brooks & DeRkensis, Boston, Mass., for plaintiff.

Elizabeth A. Ritvo, Brown, Rudnick, Freed & Gesmer, Boston, Mass., for defendant.

ORDER ON PLAINTIFF COMMAND TRANSPORTATION, INC.'S MOTION TO COMPEL ANSWERS TO QUESTIONS PROPOUNDED UPON ORAL EXAMINATION (# 28)

JOYCE LONDON ALEXANDER, United States Magistrate.

This action arises from the publication of an allegedly defamatory letter by defendant Y.S. Line (USA) Corporation ("Y.S."). The letter at issue, accusing plaintiff Command Transportation, Inc. ("Command") of impropriety in using equipment owned or leased by defendant Y.S. for export purposes without authority and in failing to promptly return Y.S. containers and rental chassis, was dated February 26, 1986 and delivered to Command's customer, Radio Shack. Command alleges that, as a result of its receipt of this letter Radio Shack terminated its relationship with plaintiff. Command contends that Y.S.'s conduct constitutes interference with contractual and advantageous relationships, product disparagement and libel.

The above described letter of February 26, 1986 was drafted by Toby Estis who was, at that time, the Y.S. employee in charge of equipment movement at Y.S.'s Boston office. Estis left her position with Y.S. on February 28, 1986.[1] The complaint in this action was filed on May 15, 1986. Sometime after the filing of the complaint Estis was contacted by William Ferguson, of Y.S., and asked to attend a meeting with William Ferguson, Joseph Murphy, and John Greenwood,[2] at Y.S.'s Boston office to discuss the case.[3] The meeting did take place, lasting approximately three hours.[4]

The instant discovery dispute arises from the March 10, 1987 deposition of Estis. During that deposition, counsel for Command questioned Estis concerning this same meeting.[5] Y.S.'s counsel objected to Command's questions on the grounds of attorney-client privilege and attorney work product doctrine.

Plaintiff now moves, pursuant to Fed.R. Civ.P. 37(a)[6], to compel Estis to answer questions concerning her participation and contribution at the subject meeting.[7] Y.S. has opposed this motion.

█ In a diversity case involving claims and defenses under state law, state law governs any issue of privilege. Federal district courts sitting in diversity cases must apply the choice of law rules of the forum state: in this case Massachusetts. *Klaxon Co. v. Stentor*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Massachusetts has adopted an interest analysis approach to choice of law issues. *Bi-Rite Enterprises, Inc. v. Bruce Miner Co., Inc.*, 757 F.2d 440 (1st Cir.1985). In this tort action, the plaintiff is a Massachusetts corporation, the defendant does business in Massachusetts, and the bulk of the acts forming the basis of plaintiff's complaint occurred in Massachusetts as well as the alleged injury. Accordingly, under Massachusetts choice of law rules, Massachusetts substantive law should provide the rule of decision regarding whether the Estis' communications with Attorney Greenwood are privileged.

█ Massachusetts law recognizes that "the attorney-client privilege may extend to communications from the client's agent or employee to the attorney," *Ellingsgard v. Silver*, 352 Mass. 34, 40, 223 N.E.2d 813 (1967), but the parties have cited and this Court can find no Massachusetts case that addresses the issue of whether the attorney-client privilege may apply to communications between a corporation's counsel and its former employee.

The Supreme Judicial Court has, however, demonstrated its willingness to follow federal precedent concerning the nature of the attorney-client privilege by its approving reliance upon and citation of the leading United States Supreme Court case in the area of the corporate attorney-client privilege, *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). *Commonwealth v. Goldman*, 395 Mass. 495, 502, 480 N.E.2d 1023 (1985), *cert. denied*, 474 U.S. 906, 106 S.Ct. 236, 88 L.Ed.2d 237 (1985).

In *Upjohn* the Supreme Court ruled that attorney-client privilege, in the corporate

---

1. Counsel for Y.S. offered this information at the May 6, 1987 hearing on the instant motion.

2. William Ferguson is Traffic Manager at Y.S., Joseph Murphy is Comptroller at Y.S., and John Greenwood is an attorney representing defendant. Plaintiff Command Transportation, Inc.'s Motion to Compel Answers to Questions Propounded Upon Oral Examination ("Motion to Compel") (# 28) at 1.

3. Transcript of March 10, 1987 deposition of Toby Estis at 134.

4. Transcript of March 10, 1987 deposition of Toby Estis at 134.

5. The specific question before Estis was, "Would you relate for the record what transpired at that meeting?" Transcript of March 10, 1987 deposition of Toby Estis at 132.

6. Fed.R.Civ.P. 37(a)(2) reads, in pertinent part:
   If a deponent fails to answer a question propounded ... the discovering party may move for an order compelling an answer ....

7. Plaintiff, at the May 6, 1987 hearing on this motion, narrowed its request to what Estis said at the meeting—her participation and contribution.

context, extends beyond communications between the corporate attorney and the corporation's "control group" to include communications made by a corporation's employees to its attorney acting at the direction of corporate superiors to secure legal advice if (1) such communications were within the employees' corporate duties, (2) the employees were sufficiently aware that information was sought from them in order to obtain legal advice, and (3) the communications were considered confidential when made and were thereafter kept confidential by the corporation. 449 U.S. at 383, 101 S.Ct. at 677.

The Court commented that:

Middle level and indeed lower level employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by the corporate counsel if he [or she] is adequately to advise the client with respect to such actual or potential difficulties.

449 U.S. at 391, 101 S.Ct. at 683. The allegedly libelous letter Estis published has been acknowledged as the central event of this litigation by both parties.[8] The information she shared with defendant's counsel was, inevitably, essential to the formulation of a defense and the prevention, if necessary, of any similar problems in the future.

The *Upjohn* court declined to decide whether the attorney-client privilege applies to communications between a corporation's counsel and its former employees. 449 U.S. at 394, n. 3, 101 S.Ct. at 685, n. 3. The Court did not hesitate, however, to stress that the attorney-client privilege exists to protect not only the giving of advice by an attorney to his or her client but also exists to protect the giving of information to the lawyer to enable him or her to give sound and informed advice. 449 U.S. at 390, 101 S.Ct. at 683. The Court stressed that the "control group" test had been contrary to the purposes of the attorney client privilege. *Upjohn's* legacy is to encourage individualized decisions in keeping with the spirit of Fed.R.Evid. 501 [9] and to encourage a focus, in consideration of the attorney-client privilege in the corporate context, on whether the application of the privilege in the circumstances of a particular case would foster the flow of information to corporate counsel regarding issues about which corporations seek legal advice. This guideline provides a model for the lower courts but it does not contravene congressional intent that the privilege be considered on a case-by-case basis. *See* Note, *Corporate Attorney-Client Privilege: The Confusion Remains After Upjohn,* 17 New Eng.L.Rev. 925, 943 (1982).

Other federal courts, in developing federal common law, have applied the protections of the corporate attorney-client privilege set forth in *Upjohn* to communications with former employees. *See e.g., Porter v. Arco Metals, Div. of Atlantic Richfield,* 642 F.Supp. 1116, 1117–18 (D.Mont.1986). The Ninth Circuit, in *In Re: Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation,* 658 F.2d 1355, 1361, n. 7 (9th Cir.1981) noted that:

Although *Upjohn* was specifically limited to current employees (citation omitted) the same rationale applies to the ex-employees (and current employees) involved in this case. Former employees, as well as current employees, may possess the relevant information needed by corporate

---

**8.** The subject letter itself may be found as Exhibit A attached to the complaint (# 1).

**9.** Fed.R.Evid. 501 reads:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

counsel to advise the client with respect to actual or potential difficulties.

Federal common law, in the post-*Upjohn* era, has developed with the awareness that "a formalistic distinction based solely on the timing of the interview cannot make a difference if the goals of the privileges outlined in *Upjohn* are to be achieved." Sexton, *A Post-Upjohn Consideration of the Corporate Attorney-Client Privilege,* 57 N.Y.U.L.Rev. 443, 499 (1982). Given this and given the fact that Massachusetts has indicated a willingness to be guided by federal law on this subject, this Court will undertake an inquiry that matches the factors enumerated in *Upjohn* and its progeny against the specific facts of this case.[10]

█ Applying the attorney-client privilege to the communications at issue in the instant case would foster the flow of information to corporate counsel regarding issues about which Y.S. was specifically seeking legal advice. The communications concerned actions taken by former employee Estis herself about which she is the most knowledgeable person. The communications have been treated as confidential.[11] There is no evidence that Ms. Estis' interests or loyalties diverge from those of the corporation in the instant case.

10. This Court notes that it is not bound by federal evidentiary rules in the instant case. They are, rather, instructive and helpful, given Massachusetts' silence on the narrow issue before the Court today and given Massachusetts' willingness to be guided by federal law on the subject of attorney-client privilege. Plaintiff's argument that this Court ought "employ an ad hoc approach to the privilege determination", as did the court in *Connolly Data Systems, Inc. v. Victor Technologies Inc.,* 114 F.R.D. 89 (S.D.Cal. 1987), ignores the fact that the *Connolly* court stressed the limitations on the precedential value of *In Re: Coordinated Pretrial Proceedings* in light of the specific guidance of the Cal.Evid. Code, § 954 and the case of *D.I. Chadbourne, Inc. v. Superior Court,* 60 Cal.2d 723, 36 Cal. Rptr. 468, 388 P.2d 700 (1964). Massachusetts case law on the attorney client privilege in the corporate context offers no guidance comparable to that contained in the *Chadbourne* case. In addition, Massachusetts has no codified rules of evidence. Indeed, although Proposed Massachusetts Rule of Evidence 502(a)(2), proposed

For all of the above reasons, and on these particular facts, this Court holds that the subject communications between the corporation counsel and Toby Estis are protected from disclosure under the attorney-client privilege.

SO ORDERED.

the "control group" test, the controversial nature of the proposal, *see* Proposed Massachusetts Rule of Evidence 502(a)(2) advisory committee's notes, the age of the proposal, and the opaque current status of the Proposed Massachusetts Rules of Evidence, *see* SJS–2787, Announcement Concerning the Proposed Massachusetts Rules of Evidence of December 30, 1982, render this Court unable to discern any clear Massachusetts opinion on the narrow issue before this Court other than a general deference to federal law on the issue of attorney-client privilege.

11. Command's argument that Y.S. must have made substantial disclosure of what transpired at the meeting in question in its answers to plaintiff's interrogatories misconstrues the attorney-client privilege in the corporate context. Attorney-client privilege may be waived, but the specific content of the privileged communication must be disclosed for this to occur. J. Moore, J. Lucas, & G. Grother, *Moore's Federal Practice,* ¶ 26.60[2] (1986).