Kaplan, Mitchell H., J.
INTRODUCTION
The plaintiffs, Joseph Badaracco and Mary Anne Badaracco, as co-administrators of the estate of their daughter Anna Maria Badaracco (“Anna Maria” and collectively, the “Plaintiffs”), filed this wrongful death action against the defendant Lenore Liner. It is undisputed that on August 21, 2006, Anna Maria was struck while walking on a sidewalk by an automobile driven by the defendant and died as a result of the injuries she sustained. The Plaintiffs’ complaint pleads two counts. Count One asserts a claim for negligence, and Count Two alleges that the defendant’s conduct was willful, wanton, reckless and/or grossly negligent and seeks an award for punitive damages. This case is before the court on the defendant’s motion for partial summary judgment dismissing Count Two. For the following reasons, the motion is ALLOWED.
BACKGROUND
On August 21, 2006, Anna Maria, age 23, was struck from behind by an automobile while walking northward on a sidewalk adjacent to Hammond Street in Newton, Massachusetts. The automobile, also traveling north on Hammond Street, was driven by Liner, age 84. The automobile traveled onto the sidewalk and struck a stone wall, a stop sign, a fire call box, and a pedestrian, the Plaintiffs’ decedent, Anna Maria. As a result of the impact, Anna Maria was thrown approximately sixty feet over the stone wall. Anna Maria was transported to Beth Israel Deaconess Medical Center where she died from injuries sustained in the accident.
According to the Motor Vehicle Crash Report prepared by the Newton Police Department and the Massachusetts State Police Reconstruction Report, Liner’s automobile was traveling northbound on Hammond Street when it crossed into the southbound lane while negotiating a left bearing curve. Massachusetts State Police Reconstruction Report 2006-0418, Joint List of Summary Judgment Exhibits (“Jt. Ex.”) 6. The automobile narrowly missed striking an oncoming automobile and swerved back into the northbound lane and *313 up onto the sidewalk where it struck Anna Maria. Id. The automobile traveled approximately eighty-eight feet on the sidewalk before reentering the northbound lane. Motor Vehicle Crash Report, Jt. Ex. 5. The automobile came to a rest approximately 110 feet from the curb jump point. Id. Officer David Webb of the Newton Police Department, the primary investigator, took pictures of the road prior to the curb jump point and noted that he “saw no indication of braking, scuff marks or yaw marks indicating an attempt to avoid the collision.” Id.
According to witness statements taken the day after the accident, Nina Farmer, the driver of the automobile in the southbound lane, observed that Liner’s automobile was “out of control” and “swerved into [the correct] lane and then up onto the sidewalk.” Jt. Ex. 10. Farmer thought that “the car was either being pursued by someone or the driver had a medical emergency.” Id. Lisa Kreiling, a passenger in Farmer’s automobile, also observed the “lack of control” of Liner’s automobile and stated that “[t]he driver of the car swerved to its right to get back into the proper lane . . .” Jt. Ex. 11. According the Reconstruction Report, Liner’s automobile was traveling roughly 35 mph at the time of the accident. Jt. Ex. 6. The posted speed limit for this section of Hammond Street is 25 mph. Id. It is undisputed that on the day of the accident there were no mechanical problems with Liner’s automobile, nor were there any adverse site, road, or weather conditions. Statement of Material Facts ¶¶8-9. In addition, the accident occurred in surroundings that were familiar to Liner and close to her home. Id. ¶10
In an affidavit, Liner attests that she “blacked out” while driving and has “no knowledge of what occurred after [she] lost consciousness, until she regained consciousness while being attended to by an ambulance attendant.” Affidavit of Lenore Liner ¶¶12-13, Jt. Ex. 1. According to the American Medical Response Patient Care Report, Liner was alert and oriented at the scene as appropriate, but could not recall the events of the accident and she was “not sure of hitting anything.” Jt. Ex. 3. Liner was placed on a backboard and taken to Beth Israel Deaconess Medical Center. She was released the same day. Liner goes on to state that she “did not experience dizziness, lightheadedness, or confusion before the accident,” and that “[b]efore the occurrence of the accident. . . [she] had never experienced syncope, a seizure, or other loss of or impairment to [her] consciousness.” Id. ¶2 and 11.
On August 28, 2006, seven days after the accident, Liner was examined by Dr. Glenn S. Kehlmann of Beth Israel Deaconess HealthCare-Brookline. In his notes, Dr. Kehlmann recites Liner’s contention that “prior to the accident she did not have any premonitory symptoms of chest pain, shortness of breath or lightheadedness or dizziness but remembers absolutely nothing leading up to the accident . . .” Jt. Ex. 7. Liner informed Dr. Kehlmann that she had a history of vertigo. Id. On September 1, 2006, Liner was examined by Dr. Nicholas J. Silvestri of Beth Israel Deaconess Medical Center. According to Dr. Silvestri’s notes, Liner could recall driving home from shopping and then “suddenly she saw the windshield ‘ice over’ and was hit by the airbag.” Jt. Ex. 4. She “denie[d] a prior history of seizures, amnesia, LOC [loss of consciousness], or syncope.” Id. Dr. Silvestri noted that upon further questioning, Liner “revealed an 8 year history of vertigo, described as discrete, 5-10 minute long episodes of ‘room spinning’ provoked by head movement.” Id. Further, Liner revealed that the “[frequency of episodes [had] increased over the past six months, averaging once every week or so.” Id. Dr. Silvestri advised Liner that she was no longer allowed to drive until the cause of the accident was determined.
In her affidavit, Liner states that “[o]n some occasions before the date of the accident, [she] had experienced a momentary lightheadedness in [her] home when rising from [her] chair or bed.” Affidavit of Lenore Liner ¶21, Jt. Ex. 1. Liner states that she “never experienced vertigo or anything like it while driving,” and “never experienced vertigo or anything like it while in a seated position." Id. A few months after the accident, Liner states that she “blacked out a second time” and underwent “extensive cardiac testing” which resulted in a diagnosis of carotid artery sensitivity syndrome. Id. ¶22. Dr. James J. Sidd, a physician retained by Liner for purposes of this litigation states that: “Carotid artery sensitivity syndrome triggers a vagal reflex which results in asystole leading to unconsciousness.” Affidavit of Dr. James J. Sidd ¶3, Jt. Ex. 2. In 2007, Liner received a pacemaker and, according to Dr. Sidd, “is essentially cured of her condition." Id.
In his affidavit, Dr. Sidd opined that Liner suffered from an episode of syncope on the day of the accident. The episode was due to Liner’s carotid artery sensitivity syndrome, which, at the time of the accident, was undiagnosed. Dr. Sidd further opined that “[t]he syncope was over in a matter of a few minutes and there were no lasting signs of it once Mrs. Liner regained consciousness, other than confusion which is typical of recovery from syncope.” Id. ¶4. According to Dr. Sidd “[v]ertigo does not cause syncope,” and that Liner “did not experience vertigo at or near the time of the accident.” Id. ¶5.
DISCUSSION
Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). The moving party bears the burden of establishing the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “This burden need not be met by affirmative evidence negating an essential element of the plaintiffs case, but may be satisfied by demonstrating *314 that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Commc’ns Corp., 410 Mass. 805, 809 (1991).
The non-moving party cannot defeat a motion for summary judgment by merely asserting that facts are in dispute. Mass.R.Civ.P. 56(e); LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Rather, to defeat summary judgment, the non-moving party must “go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.” Kourouvacilis, 410 Mass. at 714. “Conclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient.” Cullen Enters., Inc. v. Massachusetts Prop. Ins. Underwriting Ass’n, 399 Mass. 886, 890 (1987), quoting Madsen v. Erwin, 395 Mass. 715, 721 (1985). The question before the court is “whether a fair-minded jury could return a verdict for the [Plaintiffs] on the evidence presented.” Flesner, 410 Mass. at 809 (internal citations omitted).
The Plaintiffs contend that at the time of the accident, Liner’s conduct was willful, wanton, reckless and/or grossly negligent in two possible ways: (1) that her medical history was such that she knew or should have known that she should not be driving, or (2) that the manner in which she operated her automobile was, in itself, willful, wanton, reckless and/or grossly negligent. Logically, the Plaintiffs cannot prove both theories, as the first assumes that a medical emergency caused Liner to lose control of her automobile, and the second assumes a conscious decision to operate her automobile in a dangerous manner. Mass.R.Civ.P. 8(e)(2) allows a plaintiff to plead alternative hypothetical claims. However, at summary judgment, the plaintiff must come forward with evidence from which a jury could reasonably return a verdict supporting either claim. In this case, the Plaintiffs have failed to do that.
Allegations of gross negligence impose a heightened burden upon the Plaintiffs. See Zavras v. Capeway Rovers Motorcycle Club, Inc., 44 Mass.App.Ct. 17, 21 (Mass.App.Ct. 1997). “Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence ... It is very great negligence, or the absence of slight diligence, or the want of even scant care.” Altman v. Aronson, 231 Mass. 588, 591 (1919). Moreover, willful, wanton, and reckless conduct can be distinguished from negligence in two ways: “First, the defendant must knowingly or intentionally disregard an unreasonable risk. Second, the risk, viewed prospectively, must entail a high degree of probability that substantial harm would result to the plaintiff.” Manning v. Nobile, 411 Mass. 382, 387-88 (1991) (internal citations omitted). “Ordinary and gross negligence differ in degree of inattention, while both differ in kind from willful and intentional conduct . . .” Altman, 231 Mass. at 592.
The Medical Emergency
The Plaintiffs seek to recover punitive damages on the theory that Liner’s decision to operate her automobile, given her medical history of vertigo, was willful, wanton, reckless and/or grossly negligent. The Plaintiffs have cited no cases in which a court has held a defendant willful, wanton, reckless, or grossly negligent for driving while subject to a medical condition that might cause unconsciousness or other similar disabilities. There are, however, a number of cases that have considered whether such conduct could support a claim of negligence.
In Ellingsgard v. Silver, 352 Mass. 34, 37 (1967), the Supreme Judicial Court reviewed the elements of such a negligence claim. The jury returned a verdict against a defendant whose employee suffered a fatal heart attack while operating a motor boat that subsequently crashed into a dock and injured the plaintiff. See id. at 39. The employee had a history of four prior heart attacks. The SJC, however, noted that “there was no evidence that [the employee] had ever suffered a lapse of consciousness as a result of his heart condition, or that he was physically unable to stop what he was doing and call a doctor when the symptoms occurred.” Id. at 38. The SJC reviewed the law of other jurisdictions:
In those jurisdictions which have held that negligence may be based upon the operation of a motor vehicle when the operator should foresee a physical seizure, foreseeability has been found in two types of circumstances. One is when the operator suffers from a condition which indicates, from a medical viewpoint, a fairly immediate likelihood that it will result in an attack rendering him unconscious. The other is when the operator suffers warning symptoms of a physical failure during actual operation, but neglects to heed such warnings and continues to operate the vehicle. We know of no case which holds that, absent medical testimony, previous symptoms of the sort suffered by [the employee] would warrant a finding that an incapacitating seizure was foreseeable. To hold the contrary would impose a severe limitation upon the substantial number of persons who, with medical advice and treatment, attempt to live moderately normal lives despite heart conditions and other infirmities.
Id. 38-39 (internal citations omitted). The SJC then held that “the evidence would not warrant findings that the incapacitating seizure suffered . . . was foreseeable” and therefore that a directed verdict should have entered. Id. at 39.
Similarly, in Langland v. United States, No. 00-30201-FHF, 2002 U.S.Dist. LEXIS 1516, at *8 (D.Mass. Jan. 30, 2002), the District Court granted summary judgment for a defendant who lost consciousness while driving, crossed into the wrong lane, and struck the plaintiff. Following the accident, it was determined that the defendant lost consciousness as *315 a result of an undiagnosed brain tumor. See Langland, 2002 U.S.Dist. LEXIS 1516, at *2. The District Court noted that while the defendant had been having occasional headaches and an unsteady gait prior to the accident, he had never experienced a loss of consciousness or incapacitating seizure. See id. at *4. The plaintiff argued that such symptoms should have put a reasonable person on notice that a loss of consciousness was likely to occur. The District Court, however, granted summary judgment for the defendant because the evidence was insufficient for a jury to find that a loss of consciousness was reasonably foreseeable. See id. at *9-* 10. “It is true, as the plaintiff contends, that [the defendant] suffered from various ailments during the several months prior to the accident. However, it is undisputed that the brain tumor had not been diagnosed at the time of the accident. . . [and] he had never lapsed into unconsciousness as a result of these symptoms . . ."Id. at *10.
Turning to this case, the Plaintiffs have two eviden-tiary hurdles. First, they must point to sufficient evidence in the summary judgment record from which a reasonable jury could find that the defendant experienced an episode of vertigo at the time of the accident that caused her to lose control of the car. Second, they must offer similarly sufficient evidence that Liner knew or should have known that it was likely that she would experience such debilitating vertigo while driving and was thus grossly negligent in choosing to drive. Liner has submitted her own affidavit and the affidavit of a medical expert, Dr. James J. Sidd, as proof that the accident was caused by a sudden and unforeseen episode of syncope due to a rare malady termed carotid artery sensitivity syndrome which remained undiagnosed at the time of the accident. The plaintiffs have not submitted any expert opinions, but rather rely solely on Liner’s medical records.
Liner asserts that prior to the accident she “had never experienced syncope, a seizure, or other loss of or impairment to [her] consciousness.” Affidavit of Lenore Liner ¶2, Jt. Ex. 1. Liner experienced vertigo for several years prior to the accident that she described as “momentary lightheadedness in [her] home when rising from [her] chair or bed.” Id. ¶21. However, Liner states that she “never experienced vertigo or anything like it while driving,” and that she “never experienced vertigo or anything like it while in a seated position.” Id. The Plaintiffs offer no evidence, either from a percipient witness, a medical record, or an expert, that rebuts these statements.
Dr. Sidd opines that “[t]he description of events leading up to the accident . . . establishes a sudden episode of syncope which was triggered when she turned her head to the right.” Affidavit of James J. Sidd, M.D. ¶4, Jt. Ex. 2. Sidd explained that “[t]he syncope was due to [Liner’s] condition at the time, later diagnosed as carotid artery sensitivity syndrome ...” Id. ¶3. He goes on to state that “vertigo does not cause syncope” and “[njothing in the descriptions of the accident or the post-accident condition of [Liner] suggests that she experienced vertigo.” Id. ¶5. Again, the Plaintiffs offer no evidence to the contrary, or for that matter that vertigo is a symptom of carotid artery sensitivity and should have put her on notice that she had a condition that might cause unconsciousness.
In response, the Plaintiffs only point to the medical notes of Dr. Silvestri who examined Liner a few days after the accident. His notes state that Liner “denie[d] a prior history of seizures, amnesia, LOC [loss of consciousness], or syncope.” Jt. Ex. 4. Silvestri added, however, that upon further questioning, Liner “revealed an 8 year history of vertigo, described as discrete, 5-10 minute long episodes of ‘room spinning’ provoked by head movement.” Id. The Plaintiffs argue that, based on these notes, a jury could find that Liner suffered an episode of vertigo at the time of the accident which caused her to lose control of her automobile, and that it was reasonably foreseeable that this might occur. The Court disagrees. Although Liner admits to a history of vertiginous episodes, she testified that she never suffered from a loss of consciousness in any prior episodes. Liner testified that vertigo had never occurred while she was in a seated position, and never occurred while she was driving.
The Plaintiffs have simply not offered any evidence that (1) vertigo of the kind the defendant experienced previously could occur while driving; or (2) it could cause unconsciousness or otherwise cause the loss of control of an automobile in a manner consistent with the way in which the accident occurred. See Ellingsgard, 352 Mass. at 38. The court finds analogous the reasoning in Enrich v. Windmere Corp., 416 Mass. 83, 87 (1993). Although a products-liability case, Enrich is instructive regarding the need for evidence of causation. See id. In Enrich, it was undisputed that an electric cooling fan caused a house fire, but there was no evidence that there was some defect in the fan. See id. The SJC noted that “[w]hile a plaintiff need not show the exact cause of the accident or exclude all other possible causes, he must show that there is a greater probability than not that the accident resulted from the defendants negligence.” Id. A verdict may not be based on speculation and conjecture.
In the instant case, the Plaintiffs have submitted no evidence from which a jury could find that vertigo caused the accident without resort to speculation. The defendant has submitted admissible evidence that she suffered syncope as a result of a previously undiagnosed condition and that this caused unconsciousness and the resulting fatality. The Plaintiffs have offered only medical notes that Liner had been experiencing vertigo for a number of years, but nothing linking an episode of vertigo to the accident.
*316 Moreover, in this case the Plaintiffs must prove more than negligence to recover punitive damages. They must prove not only that it was negligent to drive knowing that Liner had experienced vertigo, but grossly negligent such that Liner possessed “the want of even scant care” in driving a car. Altman, 231 Mass. at 591. Here, there is no evidence that the Liner had ever suffered from an episode that rendered her unable to control her car and no evidence that vertigo had ever occurred while driving. The Plaintiffs, therefore, offer no evidence to support this additional element of a claim for gross negligence.
Gross Negligence in the Operation of the Automobile
The Plaintiffs also contend that Liner’s operation of her automobile was willful, wanton, reckless and/or grossly negligent. In support of this allegation, the Plaintiffs point to witness statements that they assert suggest conscious reckless driving.
The two eyewitnesses of the accident were not deposed. Rather, the Plaintiffs rely on their statements to the police officer following the accident. While there is substantial doubt that the portion of the police report recounting these statements would be admissible at trial, for the purposes of the motion, this court will assume that the witness statements are admissible. Nina Farmer, who was driving an automobile at the scene of the accident, stated that Liner “realized [she] [was] driving on the wrong side of the road and swerved into [the correct] lane . . .” Jt. Ex. 10. Farmer further stated that she thought that “the car was either being pursued by someone or the driver had a medical emergency.” Id. Lisa Kreiling, the passenger in Farmer’s car, also stated that Liner’s car “swerved to its right to get back into the proper lane . . .” Jt. Ex. 11.
The witness statements are not sufficient to support a finding of gross negligence. It is undisputed that on the day of the accident there were no mechanical problems with Liner’s automobile, nor were there any adverse site, road, or weather conditions. Statement of Material Facts ¶¶8-9. Liner contends, and the Plaintiffs do not dispute, that she had no passengers in the car at the time of the accident and was not otherwise distracted by devices in her car. Affidavit of Lenore Liner ¶16, Jt. Ex. 1. Further, there is no evidence that Liner was engaged in some activity at the time of the accident that could likely cause her to lose control of her automobile, e.g., talking on a cell phone, texting, or driving so fast that it was likely that she would lose control of her automobile.
The facts of this case are similar to the facts of McGovern v. Tinglof, 344 Mass. 114, 114 (1962). In McGovern, the jury returned a verdict against a defendant whose decedent suffered a fatal coronary occlusion while driving which rendered him helpless and unable to drive his car. See id. at 116. The case was tried on an auditor’s report, in which the auditor found that the driver became incapacitated some three hundred feet before his car struck the plaintiff, and additional evidence, including the testimony of an eyewitness who claimed that the driver passed his truck and sounded his horn shortly before the accident and therefore must have been alive at that time. See id. at 117-18. The defendant appealed from the trial court’s denial of his motion for a directed verdict. Taking into account the statement of the eyewitness, the SJC found that “[t]here was no evidence to contradict the auditor’s finding that [the driver] was either completely incapacitated or dead when his car . . . struck the plaintiff.” Id. at 119. The SJC added that “[a]t the very most it might warrant a finding that [the defendant] was at a point nearer to the scene of the accident when the seizure occurred . . .” Id. at 118.
Similarly in this case, even if the witness statements are admissible and some evidence that Liner was still conscious when she swerved out of the southbound lane, the Plaintiffs have failed to produce any evidence to suggest that a loss of consciousness did not occur after such a maneuver and thus merely closer to the point that Anna Maria was struck. Further, even if a jury were to find that Liner was conscious and operating negligently in allowing her car to drift into the left-hand lane before swerving back to the right, there is no evidence in the summary judgment record to support the allegation that she was operating in a willful, wanton, reckless and/or grossly negligent manner. While it is true that “[e]ven where the inattention was only momentary, a jury has been allowed to find gross negligence where the inattention occurred in a place of great and immediate danger,” there is no evidence in the summary judgment record from which a jury could reasonably find that Liner was inattentive while driving or that Liner was in a place of great and immediate danger. Zavras, 44 Mass.App.Ct. at 22, quoting Dinardi v. Herook, 328 Mass. 572, 574 (1952).
The Plaintiffs’ contention that the distance that the automobile traveled along the sidewalk is proof of gross negligence is equally unavailing. It may be proof that the car was out of control, a fact not disputed by Liner, but it is not probative on what caused Liner to lose control.
ORDER
For the foregoing reasons, the Defendant’s motion for partial summary judgment is ALLOWED. An order shall enter dismissing Count Two of the complaint.