NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-284

LILLIAN FOURNIER

vs.

MEAGHAN N. SCAHILL & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff was injured, and her companion killed, when a car driven by Scahill (the defendant) crossed into oncoming traffic, drove along a tree-lined shoulder, entered a parking lot, and ran into a line of parked cars where the plaintiff's companion had just parked his truck.  The plaintiff brought claims for negligence against both the defendant and her employer, Polar, as she was working at the time of the accident. In response, the defendant maintained that she lost control of her car due to a sudden unforeseeable medical event.  A judge of the Superior Court allowed the defendants' motion for summary judgment.  This appeal followed.  Based on the summary judgment record, we affirm.

_____

[1] Polar Corporation (Polar).

Background.  We draw the background from the parties'
consolidated statement of undisputed material facts, reserving
additional facts for discussion.  The defendant worked part-time
for Polar, driving her own car to stock grocery stores with
Polar products.  Before Polar hired the defendant, it obtained
her registry of motor vehicles (RMV) records and required that
she undergo a background check and pass a drug screen.  Polar
was not aware that the defendant had any condition that would
affect her ability to drive.  The defendant did not recall
experiencing an episode of amnesia before the date of the
accident.  The defendant had no medical diagnosis that precluded
her from operating a motor vehicle.  She took no medications
within the six months before the accident and was not aware of
"any condition, physical or otherwise" that affected her ability
to drive.

The day before the accident, the defendant woke up at
approximately 7:30 A.M. and made deliveries for approximately
nine hours (with a stop for lunch), finishing at about 5 or 5:30
P.M.  She watched television until approximately 10 P.M., then
went to bed.  She did not consume any alcoholic beverages,
medications, prescription or nonprescription drugs within the
twenty-four hours before the accident.

The defendant had her usual breakfast on the day of the
accident; she had never experienced any physical symptoms after

eating this breakfast.  From approximately 7 A.M. to 8 A.M., she delivered Polar items to a store in Westfield; leaving the store, she felt fine and had no hesitation about driving to her next location.  In a videotape from the store, the defendant is seen stocking shelves; she "appeared fine," doing her job without evident impairment or difficulty.  After the defendant left the store, she recalls turning into the eastbound lane of Route 20; after this, she has no memory of anything until someone knocked on her car window.

Witnesses driving on Route 20 saw the defendant's car cross the double yellow line into the westbound lane of Route 20, cross two lanes of oncoming traffic, continue off the road, and drive for a distance along the shoulder.  One witness followed the defendant's car and repeatedly sounded his car's horn, trying to get the driver's attention.  Witnesses described the defendant as appearing unconscious, with her head down, from the time they first noticed her; one said her head was "bobbing" when the car ran over the rough shoulder.[2]  The defendant's car entered a restaurant parking lot where it hit several parked vehicles, including the truck from which the plaintiff had

---

[2] At the defendant's criminal trial, one witness testified that he had initially assumed the defendant was on a cell phone, but then followed the car across two lanes of traffic, watched it drive up an embankment and collide with cars in the parking lot, approached the car, and concluded that the defendant was unconscious "the whole time."

recently alighted, before stopping.  The defendant's car did not brake before hitting the parked cars.

After the defendant's car came to a stop, the witness who followed the car from Route 20 ran to the defendant's car door and saw that she was "not aware or conscious."  His repeated pounding on the window roused the defendant, who was then extricated from her car with the "jaws of life" and put in an ambulance.

In the ambulance, the defendant spoke with a certified drug recognition expert (DRE).  The defendant told the DRE that she had previously experienced addiction (of an unspecified type) and had not ingested any drug in over one year.  The DRE did not detect any alcohol odor and perceived the defendant's speech to be clear and coherent; a breath test detected no blood alcohol content; and the DRE's various other analyses disclosed no signs of drug or alcohol impairment.  The defendant was taken to a hospital emergency room where she was seen for long enough that a hospital record noted a "clinical impression" of syncope (losing consciousness), but the defendant left the emergency room before receiving any further testing, treatment, or diagnosis.  Polar requested that the defendant take a drug test after the accident, but she did not.  She underwent no medical evaluation after the accident to determine what happened to her on the day of the accident.

An inspection of the defendant's car did not disclose any mechanical deficiencies that could or would have contributed to losing control of its safe operation. An expert retained by the defendant opined, "'[w]ith good medical certainty[,]' that 'Scahill suffered an unforeseen syncopal event while driving her car resulting in loss of consciousness and then the subsequent accident.'"[3]

Discussion. We review a grant of summary judgment de novo to determine whether, viewing the evidence in the light most favorable to the nonmoving party, "all material facts have been established and the moving party is entitled to judgment as a matter of law" (citation omitted). Casseus v. Eastern Bus Co., 478 Mass. 786, 792 (2018). "The moving party bears the burden of affirmatively demonstrating the absence of a triable issue." Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 550 n.6 (2008). If the moving party carries its burden, to defeat summary judgment, "the party opposing the motion must respond and allege specific facts establishing the existence of a

_____

[3] The plaintiff maintains on appeal that the expert's opinion lacked evidentiary value because it was not based on an examination of the defendant and did not consider information specific to the defendant. Our review is based, as it must be, on the evidence before the trial judge, including the parties' consolidated statement of undisputed material facts. In that statement, the plaintiff admitted that the expert opined as described. In any event, our decision does not rest on the opinion of the defendant's expert, and we may assume without deciding that it is not a proper medical opinion.

genuine issue of material fact." French King Realty Inc. v. Interstate Fire & Cas. Co., 79 Mass. App. Ct. 653, 659-660 (2011).

In a negligence action, "the plaintiffs bear the burden of proving that the defendant committed a breach of the duty to use reasonable care, that the plaintiffs suffered actual loss, and that the defendant's negligence caused their loss." Glidden v. Maglio, 430 Mass. 694, 696 (2000). "Negligence . . . is the failure of a responsible person, either by omission or by action, to exercise that degree of care, vigilance and forethought which, in the discharge of the duty then resting on him, the person of ordinary caution and prudence ought to exercise under the particular circumstances." Altman v. Aronson, 231 Mass. 588, 591 (1919).

"Ordinarily, summary judgment is not an appropriate means to resolve negligence cases, because usually the question of negligence is one of fact." Roderick v. Brandy Hill Co., 36 Mass. App. Ct. 948, 949 (1994). However, "when no rational view of the evidence warrants a finding that the defendant was negligent," the issue may "be taken from the jury." Mullins v. Pine Manor College, 389 Mass. 47, 56 (1983).

"[A] sudden and unforeseeable physical seizure rendering an operator unable to control his motor vehicle cannot be termed negligence." Ellingsgard v. Silver, 352 Mass. 34, 36 (1967),

6

quoting Carroll v. Bouley, 338 Mass. 625, 627 (1959). Put another way, if the evidence requires, as a matter of law, a finding that the defendant's car "went out of control through no fault of the driver," McGovern v. Tinglof, 344 Mass. 114, 119 (1962), and the cause of her incapacity was sudden and unforeseeable, we must affirm. See Ellingsgard, 352 Mass. at 36-39.

Here, the agreed-upon facts leave no dispute of material fact as to the plaintiff's having suffered a sudden, unforeseeable medical emergency. Taken as a whole, the plaintiff's admissions that the defendant did not recall any prior amnesia, had no medical diagnosis that precluded her from driving, took no medications for the six months before the accident, nor any drugs, alcohol, or medications within the twenty-four hours before the accident, went to bed shortly after 10 P.M. the night before, had her usual breakfast, and both felt and appeared fine immediately before the accident, in conjunction with the undisputed eyewitness testimony, carry the defendant's summary judgment burden by demonstrating the absence of a triable issue. See Milliken, 451 Mass. at 550 n.6.

The plaintiff produced no admissible evidence in response or rebuttal to the motion. She contends that the defendant's refusals to remain at the hospital for further examination and to submit to drug testing and her denial of memory of the

7

accident support a conclusion she did not suffer a medical emergency and allow for an inference of consciousness of liability. But the plaintiff admitted in the statement of undisputed facts that the defendant had taken no drugs or alcohol for at least twenty-four hours before the accident. The plaintiff also suggests the defendant may have fallen asleep. But her admission in the statement of undisputed facts that the defendant went to bed at 10 P̲.M̲. the night before the accident renders this inference unavailable.

We cannot say on this record whether it was imprudent for plaintiff's counsel to agree on the plaintiff's behalf to all these facts, but the undisputed statement of facts is operative in a motion for summary judgment. In light of those undisputed facts, even drawing every inference in favor of the plaintiff, the defendant is entitled to judgment as a matter of law.

Judgment affirmed.

By the Court (Rubin, Singh & Hershfang, JJ.[4]),

*Joseph F. Stanton*

Clerk

Entered: November 30, 2023.

---

[4] The panelists are listed in order of seniority.