HORIZON OF HOPE MINISTRY, et al., Plaintiff,

v.

CLARK COUNTY, OHIO, et al., Defendants.

No. C–3–82–219.

United States District Court, S.D. Ohio, W.D.

June 3, 1986.

Frederick M. Gittes, Michael S. Kolman, Attorneys at Law, Columbus, Ohio, for plaintiffs.

Thomas J. Veskauf, Attorney at Law, William Groves, Attorney at Law, Springfield, Ohio, for defendants.

Thomas E. Trempe, Asst. Pros. Atty., Springfield, Ohio, for non-party movants.

## DECISION AND ENTRY OVERRULING RAYMOND B. JORDAN AND JAMES A. BERRY'S MOTION FOR PROTECTIVE ORDERS (DOC. # 47 AND # 48) EXCEPT TO THE EXTENT OF GRANTING THE PROTECTIVE ORDER SET FORTH HEREIN; DECISION AND ENTRY DEEMING DEFENDANT CLARK COUNTY, OHIO'S, MOTION FOR PROTECTIVE ORDER (DOC. # 42) MOOT; TELEPHONE CONFERENCE SET

RICE, District Judge.

This case is before the Court on Motions for Protective Orders by Prosecutor James A. Berry and Sheriff Raymond B. Jordan (Doc. # 47 and # 48). Counsel for the Plaintiffs, Defendants and the Sheriff and Prosecutor have informally resolved this discovery dispute with regard to a large portion of the documents sought. Counsel, however, were unable to agree upon whether the following documents are discoverable:

# P7—Grand Jury testimony of Rev. Saunders.

# P8—Grand Jury testimony of Edward Brown

# P9—Phone messages and notes regarding zoning case

# P11—Radar investigation file

# P12—Statements file

# P13—Investigation file

# P15—Investigation file

# P16—Fire investigation file

# P17—Wilson investigation file

# P18—Fire investigation records/miscellaneous complaints

# P31—Correspondence regarding zoning code and zoning disputes

# P32—Affidavits and statements file

# P33—Correspondence with Houser

# S1—Huey personnel file

# S2—Dickerson personnel file

# S3—Posey personnel file.

(These numbers are those assigned the documents by counsel, with the refinement of a prefix of "P" for Prosecutor's documents and "S" for Sheriff's documents).

Upon review of these documents, the Court concludes that they fall into five categories: (1) Grand Jury testimony (# P7 and # P8); (2) Investigative files (# P9, # P11, # P13, # P15, # P16, # P17, and # P18); (3) Correspondence (# P31 and # P33); (4) Statements files (# P12 and # P32); and (5) Personnel Records (# S1, # S2 and # S3). Defendants and Prosecutor Berry contend that Category 1 materials are not discoverable due to the secrecy accorded Grand Jury testimony. They argue that Category 2 materials are not discoverable because they are privileged governmental investigative files, and that Category 3 and Category 4 materials are not discoverable, because they are privileged governmental files, they are privileged attorney/client communications and they are attorney work product. Finally, Defendants and Sheriff Jordan argue that Category 5 materials are not discoverable because they are confidential police personnel files. For the reasons set forth below, the Court rejects each of these privilege arguments and finds all of the materials in Categories 1, 2, 3, 4 and 5 to be discoverable.

### (1) *Grand Jury Transcripts*

The proper functioning of the grand jury system depends upon its secrecy. As the Supreme Court has noted:

[S]everal distinct interests are served by safeguarding the confidentiality of grand jury proceedings. First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly as they would be open to retribution as well as to inducements. There would also be the risk that those about to be indicted would flee, or would try to influence grand jurors to vote against indictment. Finally, by preserving the secrecy of proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

*Douglas Oil Company v. Petrol Stops Northwest*, 441 U.S. 211, 218–19, 99 S.Ct. 1667, 1672–73, 60 L.Ed.2d 156 (1979).

Grand jury secrecy, however, is not absolute. *See id.* at 223, 99 S.Ct. at 1675; *Dennis v. United States*, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); *United States v. Procter & Gamble Company*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). Fed.R.Crim.P. 6(e)(2) "represents the main statutory expression of the common presumption that the grand jury proceedings should remain secret." *United States v. Jeter*, 775 F.2d 670, 674 (6th Cir. 1985). Rule 6(e)(3)(C) provides for exceptions to the rule of grand jury secrecy:

Disclosure or otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

(i) when so directed by a court preliminary to or in connection with a judicial proceeding. . . .

In *Douglas Oil*, the Supreme Court outlined the standards for determining when grand jury materials could be disclosed:

The party seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed. . . . [D]isclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy, and . . . the burden of demonstrating this balance rests upon the private party seeking disclosure. . . . [A]s the considerations justifying secrecy become less relevant, a party asserting a need for grand jury transcripts will have a lesser burden in showing justification.

441 U.S. at 222–23, 99 S.Ct. at 1674–75.

Applying this "particularized need" test to the present request for discovery, the Court first notes that Plaintiffs' need for these grand jury transcripts is great—no other source can provide the information contained in these transcripts to the Plaintiffs. This is not a case in which Plaintiffs are attempting to use the grand jury testimony as a shortcut to discovering facts otherwise available. These grand jury proceedings are allegedly part of a conspiracy to deprive the Plaintiffs of their civil rights. Only by review of the transcripts requested can Plaintiffs possibly show that the grand jury proceedings in question were aimed at depriving them of their civil rights rather than the legitimate investigation of a criminal act.

■ The Court further finds that the need for secrecy with regard to these grand jury transcripts is minimal.[1] The criminal investigation of which these grand jury proceedings were a part is over. The testimony requested is that of one of the Plaintiffs and of a former ward and "employee" of this Plaintiff. There is no indication that any of the Plaintiffs are in a position to seek retribution against this wit-

---

**1.** The Court notes that the usual practice under *Douglas Oil* would require the Clark County court that impaneled the grand jury to determine the remaining need for secrecy. This rule, however, is merely a guideline, and in the present case, the record regarding the continued

need for secrecy has been so developed, particularly at the Court's meeting with counsel regarding the *in camera* review of documents, that this Court believes itself able to properly form and evaluate these secrecy concerns.

**4**

ness. Further, any conceivable damage done by the breach in the secrecy of the grand jury proceedings can be limited by a strict protective order. Accordingly, while it notes that some interest in grand jury secrecy remains, the Court must conclude that as balanced against the compelling need for disclosure of this testimony in this case, the remaining need for grand jury secrecy is minimal.

The grand jury transcripts requested (# P7 and # P8) are therefore ordered disclosed in accordance with the terms of the protective order set forth below.

### (2) *Investigative Files*

Plaintiffs also seek discovery of a number of files relating to the investigation of alleged zoning violations by Horizon of Hope and to the fire which was the subject of the grand jury investigation. In determining whether Plaintiffs should be permitted to discover such materials, the Court must balance the public interest in the confidentiality of law enforcement investigations against the Plaintiffs' need to obtain data to support their allegations. In applying this balancing test, the following factors must be considered:

(1) The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information;

(2) The impact upon persons who have given information of having their identities disclosed;

(3) The degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure;

(4) Whether the information sought is factual data or evaluative summary;

(5) Whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;

(6) Whether the police investigation has been completed;

(7) Whether any intra-departmental disciplinary proceedings have arisen or may arise from the investigation;

(8) Whether the plaintiff's suit is non-frivolous and brought in good faith;

(9) Whether the information sought is available through other discovery or from other sources; and

(10) The importance of information sought to the plaintiff's case.

*Urseth v. City of Dayton,* 110 F.R.D. 245, 253 (S.D.Ohio 1986) (quoting *Frankenhauser v. Rizzo,* 59 F.R.D. 339, 344 (E.D.Pa. 1973)).

Applying these standards to the present case, the Court finds that on its face, Plaintiffs' suit is non-frivolous and brought in good faith. The Court further notes that the materials sought are extremely important to the Plaintiffs' case in that, like the transcript of the grand jury proceedings, they allegedly show conduct which was part of a conspiracy to deprive Plaintiffs of their civil rights. Plaintiffs seek to discover these materials because they allegedly will indicate that the investigation itself was part of this conspiracy, rather than because these materials will serve as a shortcut to discovery of facts otherwise available. In other words, the investigations recorded in these files are alleged *to be part of the conspiracy* to deprive Plaintiffs of their civil rights, rather than an investigation of such a conspiracy. The Court, therefore, finds that the information contained in these files is extremely important to Plaintiffs' case.

■ In contrast, discovery of these files will cause little harm to the public interest in the confidentiality of law enforcement investigative files. This investigation has been completed, there is no indication that disclosure of these files would reveal any privileged self-evaluation by Clark County law enforcement officials, and Plaintiffs are not actual or potential criminal defendants in any proceeding arising from the investigations in question.[2] Furthermore,

---

**2.** Indeed, at its conference with counsel regarding *in camera* review of these documents, the Court requested counsel for the Prosecutor to submit an affidavit indicating that these investi-

the damaging impact of disclosing the identities of individuals giving information to the government investigation will be minimized by the protective order set forth below. Accordingly, the Court concludes that the balance of the public's and the Plaintiffs' interests in these investigative files favors release of these files to the Plaintiffs.

### (3) *Correspondence and Statements Files*

Categories 3 and 4 of the documents in dispute consist respectively of correspondence between Prosecutor Berry and John Houser of the Zoning Department (# P31 and # P33) and of various statements of citizens who had various types of contact with Plaintiff Saunders (# P12 and # P32). The request for these documents raises three issues: (1) Are these materials protected by the law enforcement or executive privilege? (2) Are these materials protected by attorney/client privilege? (3) Are these materials protected by attorney work product privilege?

■ The Court has set forth above the standards for determining whether materials requested in civil discovery are protected by executive or law enforcement privilege. With these materials, as with the Category 2 materials, Plaintiffs' claim is that the preparation of the materials itself was part of the ongoing conspiracy to deprive Plaintiffs of their civil rights, rather than that the materials in question might help Plaintiffs discover the fact surrounding some independent conspiracy to deprive the Plaintiffs of those civil rights. Accordingly, the Court finds that this material is of great importance to Plaintiffs' case. Furthermore, the Court is unaware of any facts that would indicate a strong public interest in protecting these materials from disclosure. The civil and criminal actions connected with these materials are long since closed. No significant government interests have been identified that would be harmed by disclosure of these documents.

Again, any adverse effect caused by the disclosure of the names of persons giving information to the Clark County Government in connection with these files will be minimized by the protective order set forth below. Accordingly, the Court holds that executive or law enforcement privilege does not bar discovery of these materials by the Plaintiffs.

■ Similarly, even assuming *arguendo* that these materials are confidential communications between an attorney and a client and that they are attorney work product materials, the Court must conclude that they are not privileged because Plaintiffs have made a *prima facie* showing that they were prepared in order to perpetuate a tort. Attorney/client communications which are in perpetuation of a tort are not privileged. *See In Re Sealed Case,* 737 F.2d 94, 99 (D.C.Cir.1984) (quoting *United States v. United Shoe and Machinery Corp.,* 89 F.Supp. 357, 358–59 (D.Mass. 1950)); *In Re Grand Jury Proceedings,* 727 F.2d 1352, 1355 (4th Cir.1984); *In Re Grand Jury Proceedings,* 689 F.2d 1351, 1352 (11th Cir.1982). A similar exception exists with regard to the attorney work product privilege. *See, e.g., In Re International Systems and Controls Corporation Securities Litigation,* 693 F.2d 1235, 1241–43 (5th Cir.1982); *In Re John Doe Corp.,* 675 F.2d 482, 492–93 (2nd Cir.1982). In order to overcome an assertion of these privileges, the party seeking discovery must make out a prima facie case that the relevant communications or work product were made in order to commit or perpetuate a tort. *Cf. In Re International Systems and Controls Corporation Securities Litigation,* 693 F.2d at 1242–43. In this case, the Court finds that the deposition of William E. Saunders sets forth sufficient facts to make out a prima facie case that the communications and documents in Categories 3 and 4 were produced in furtherance of a conspiracy to deprive Plain-

gations were ongoing, if this was the case. Since no such affidavit has been filed, the Court must conclude that these investigations have ended.

tiffs of their civil rights. *See* Saunders Deposition at 73–79, 123–47, 243–53.[3]

Accordingly, the Court must conclude that neither the attorney/client privilege nor the attorney work product privilege bar disclosure of these requested documents. Therefore, the Court finds that the documents in Categories 3 and 4 are discoverable by Plaintiffs in accordance with the terms of the protective order set forth below.

### (4) *Personnel Files*

 Category 5 of the materials in dispute contains the personnel files of three Defendant police officers. Plaintiffs argue that under Ohio statutory law these personnel records are confidential and therefore not discoverable. However, in a federal civil rights action, federal law applies to the determination of what evidence is privileged and discoverable. *See* Fed.R. Evid. 501; *Spell v. McDaniel*, 591 F.Supp. 1090, 1119 (E.D.N.C.1984). Under federal law, there is no privilege for personnel files. *See id.* at 1119. Accordingly, the Court must conclude that Category 5 materials are discoverable.

In sum, the Court finds that all of the materials presented to the Court for in-camera review are discoverable. Accordingly, the Motions for Protective Order of Prosecutor Berry (Doc. # 48) and Sheriff Jordan (Doc. # 47) are hereby overruled. Because it appears to the Court that the materials released by this Decision are those sought to be protected by Defendant Clark County's Motion for Protective Order (Doc. # 42), that motion is deemed moot.

However, the Court imposes the following conditions upon the documents ordered produced by Prosecutor Berry and Defendant Jordan in this Decision: Inspection and access to the documents and materials produced shall be limited to Plaintiffs' counsel and to such persons as may be employed by Plaintiffs' counsel in connection with Plaintiffs' preparation for trial on this matter.

Plaintiffs shall not disclose the contents of the documents and materials to any other person other than those described, except by order of this Court.

A conference call between the Court and all counsel is hereby set for Friday, June 6, 1986, at 4:30 p.m. in order to discuss the mechanics of the release of these documents, to set a date for a hearing on Plaintiffs' counsels' Motion to Withdraw and to reset the trial date in this case.

---

**3.** The finding of a *prima facie* showing should not be construed as a judgment by the Court as to the ultimate merits of any party's position. This finding is made on the basis of a limited record, without rebuttal by Defendants, and is made only for purposes of this motion.